Bonnie L. HOESING, Next Friend and Mother of Rose Marie Hoesing, Ann Marie Hoesing, and Jeffrey F. Hoesing, Minors, Plaintiff,

v.

SEARS, ROEBUCK & CO., a New York Corporation, Defendant.

Alan F. HOESING, Plaintiff,

v.

SEARS, ROEBUCK & CO., a New York Corporation, Defendant.

Robert J. ALLISON, Next Friend and Father of Chad R. Allison and Scott D. Allison, Minors, Plaintiff,

v.

SEARS, ROEBUCK & CO., a New York Corporation, Defendant.

Civ. Nos. 79–0–191, 79–0–192 and 79–0–195.

United States District Court, D. Nebraska.

Feb. 7, 1980.

Philip H. Robinson, Jr., Bellevue, Neb., for plaintiff.

Jack W. Marer, Omaha, Neb., for defendant.

MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion to dismiss.

This is a diversity action in which the plaintiffs seek to recover damages for injuries caused to their parents by the defendant. The defendant contends that this suit should be dismissed because under Nebraska law a child has no cause of action against a third party for damages for non-fatal injuries to his parent. The plaintiffs recognize that the Nebraska Supreme Court has never ruled on the existence of such a cause of action, but contend that the Nebraska Supreme Court's rulings in other areas suggest that the state supreme court would create such a cause of action if given the opportunity.

Since the Nebraska Supreme Court has not ruled on this issue, this Court has the responsibility to attempt to ascertain what rule the Nebraska Court would adopt. In making this determination, this Court should consider any Nebraska authority "persuasively indicating the course of decisions within the state." *Cudahy Company v. American Laboratories, Inc.*, 313 F.Supp. 1339, 1342 (D.Neb.1970). This Court will also consider the decisions of other jurisdictions, since it is clear that the Nebraska Supreme Court would also consider this authority in making its decision. *Seedkem v. Safranek*, 466 F.Supp. 340, 341 (D.Neb. 1979).

The plaintiffs have cited a number of Nebraska cases from which it may logically be inferred that the Nebraska Supreme Court would recognize this cause of action. The plaintiffs' arguments which rely on logic and analogy, however, are not persuasive, since the resolution of the issue before this Court must be based on public policy considerations.

Plaintiff's claim, viewed in the abstract and divorced from its surroundings, carries both logical and sympathetic appeal. . . . Certain aspects of spousal relationship are similar to those of the parent-child relationship, and there can be

little question of the reality of the loss suffered by a child deprived of the society and care of its parent. Nevertheless our decision must take into account considerations in addition to logical symmetry and sympathetic appeal. . . . [N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages under the general rule of tort liability (Civ.Code § 1714), the courts must locate the line between liability and nonliability at some point, a decision which is essentially political. *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 306, 563 P.2d 858, 862 (1977).

These policy factors have convinced a majority of courts to deny the existence of a cause of action for a child's loss of support and services due to parental injury. *See Early v. United States*, 474 F.2d 756, 758–59 (9th Cir. 1973) (Alaska law); *Pleasant v. Washington Sand & Gravel Co., Inc.*, 104 U.S.App.D.C. 374, 375–76, 262 F.2d 471, 472–73 (D.C.Cir. 1958); *Meredith v. Scruggs*, 244 F.2d 604 (1957) (Hawaii law); *Turner v. Atlantic Coast Line Railroad Company*, 159 F.Supp. 590 (N.D.Ga.1958) (South Carolina Law); *Jeune v. Del E. Webb Construction Co.*, 77 Ariz. 226, 227, 269 P.2d 723, 724 (1954), *overruled on other grounds, Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803 (1972); *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 310, 563 P.2d 858, 866 (1977); *Clark v. Suncoast Hospital, Inc.*, 338 So.2d 1117, 1118–19 (Fla.Ct.App.1976); *Hankins v. Derby*, 211 N.W.2d 581, 584–85 (Iowa 1973); *Hoffman v. Dautel*, 189 Kan. 165, 167–169, 368 P.2d 57, 59–60 (1962); *Sabatier v. Travelers Insurance Company*, 184 So.2d 594, 595 (La.Ct.App.1966); *Miller v. Monsen*, 228 Minn. 400, 403–07, 37 N.W.2d 543, 546–47 (1949); *General Electric Company v. Bush*, 88 Nev. 360, 367, 498 P.2d 366, 371 (1972); *Russell v. Salem Transport Company*, 61 N.J. 502, 506, 295 A.2d 862, 864 (1972); *Cox v. Stretton*, 77 Misc.2d 155, 158–61, 352 N.Y. S.2d 834, 839–41 (Sup.Ct.1974); *Hastings v. James River Aerie No. 2337*, 246 N.W.2d 747, 753 (N.D.1976); *Gibson v. Johnston*, 144 N.E.2d 310, 313 (Ohio Ct.App.1956); *Roth v. Bell*, 24 Wash.App. 92, 101–104, 600 P.2d 602, 608–609 (1979). Only one court has found that a child may recover for loss of parental consortium when a nonfatal injury is involved. *Berger v. Weber*, 82 Mich. App. 199, 201–203, 267 N.W.2d 124, 125 (1978). For the reasons discussed below, this Court is of the opinion that the Nebraska Supreme Court would adopt the majority view.

In determining whether to recognize a cause of action for loss of parental consortium, this Court must consider the intangible, non-pecuniary nature of consortium loss. The companionship and guidance of a parent cannot be regained by a monetary award. The loss that a child suffers is such that he can never be compensated for it. Allowing the plaintiff to recover damages for loss of parental consortium creates a future benefit for the child which is essentially unrelated to the loss suffered. *Borer v. American Airlines, Inc., supra*, 138 Cal. Rptr. at 306, 563 P.2d at 862.

In addition to the non-compensatory nature of any damages award, the Court must also consider the social burden of providing damages for loss of parental consortium. The burden of paying awards for loss of consortium will be borne by the public generally in increased insurance premiums. *Borer v. American Airlines, Inc., supra*, 138 Cal.Rptr. at 306, 563 P.2d at 862. An additional social cost is the expenditure of valuable judicial resources in litigating these claims. This cost would be substantial, since a claim of loss of consortium would be raised in any case involving a serious injury to a parent. *Borer v. American Airlines, supra*, 138 Cal.Rptr. at 306, 563 P.2d at 862. When the social costs are weighed against the non-compensatory nature of the monetary award, it appears that the social costs outweigh the purported benefits. *Borer v. American Airlines, supra*, 138 Cal.Rptr. at 306, 563 P.2d at 862.

The plaintiffs, however, note that the Nebraska Supreme Court has permitted recovery of monetary damages for intangible

losses. Under Nebraska law, a person can recover for loss of marital consortium. *See Omaha & Republican Valley Railway Company v. Chollette*, 41 Neb. 578, 59 N.W. 921 (1894). In addition, the parents, children, and siblings of a deceased person may bring a wrongful death action to recover for the loss of consortium due to their relative's death. *See Caradori v. Fitch*, 200 Neb. 186, 263 N.W.2d 649 (1978); *Selders v. Armentrout*, 190 Neb. 275, 207 N.W.2d 686 (1973); *Wood v. City of Omaha*, 87 Neb. 213, 127 N.W. 174 (1910). These cases, however, do not require this Court to recognize a cause of action for loss of parental consortium when a nonfatal injury is involved.

Plaintiffs point out that courts have permitted recovery of monetary damages for intangible loss in allowing awards for pain and suffering in negligence cases and in sanctioning recovery for loss of marital consortium. *The question before us in this case, however, pivots on whether we should recognize a wholly new cause of action, unsupported by statute or precedent; in this context the inadequacy of monetary damages to make whole the loss suffered, considered in light of the social cost of paying such awards, constitutes a strong reason for refusing to recognize the asserted claim.* To avoid misunderstanding, we point out that our decision to refuse to recognize a cause of action for parental consortium does not remotely suggest the rejection of recovery for intangible loss; *each claim must be judged on its own merits, and in many cases the involved statutes, precedents, or policy will induce acceptance of the asserted cause of action.* (emphasis added). *Borer v. American Airlines, Inc., supra,* 138 Cal.Rptr. at 306, 563 P.2d at 862.

Another reason for refusing to extend liability for loss of consortium is the difficulty in placing a pecuniary value on the plaintiffs' loss. There is no standard by which a trier of fact can determine whether a particular dollar amount is an adequate award in any given setting. This difficulty in ascertaining the amount of damages leads in turn to the risk of double recovery: "to ask the jury, even under carefully draft-

ed instructions, to distinguish the loss to the mother from her inability to care for her children from the loss to the children from the mother's inability to care for them may be asking too much." *Borer v. American Airlines, supra,* 138 Cal.Rptr. at 307, 563 P.2d at 863.

The plaintiffs, however, argue that the risk of double recovery and the problem of ascertaining the pecuniary value of loss of consortium are not sufficient reasons to deny liability here. They note that the Nebraska Supreme Court allows recovery for loss of marital consortium. Based on this Nebraska case law, the plaintiffs argue that it is illogical to refuse to allow a cause of action for loss of parental consortium when there is a nonfatal injury. This Nebraska case law, however, should not be read as holding that policy arguments based upon the intangible character of the damages and the difficulty in measuring such damages should *not* be considered at all in determining whether liability for loss of consortium should be extended into a new area. Rather, this Court is of the opinion that the Nebraska law should be interpreted as holding "no more than that in the context of a spousal relationship, the policy arguments against liability do not suffice to justify a holding denying a cause of action." *Borer v. American Airlines, supra,* 138 Cal. Rptr. at 307, 563 P.2d at 863.

The plaintiffs' argument that it is illogical to permit recovery for loss of marital consortium but not to allow recovery for loss of parental consortium ignores important policy problems. Unlike recovery for loss of marital consortium, recovery for parental consortium involves serious problems of multiplication of claims and of inflation of damage awards.

"If the claim were allowed there would be a substantial accretion of liability against the tortfeasor arising out of a single transaction (typically the negligent operation of an automobile). Whereas the assertion of a spouse's demand for loss of consortium involves the joining of only a single companion claim in the action with that of the injured person, the

right here debated would entail adding as many companion claims as the injured parent had minor children, each such claim entitled to separate appraisal and award. The defendant's burden would be further enlarged if the claims were founded upon injuries to both parents. Magnification of damage awards to a single family derived from a single accident might well become a serious problem to a particular defendant as well as in terms of the total cost of such enhanced awards to the insured community as a whole." *Borer v. American Airlines, Inc.*, 138 Cal. Rptr. at 307, 563 P.2d at 863, *quoting Russell v. Salem Transportation Co., supra*, 61 N.J. at 506, 295 A.2d at 864. These additional policy considerations, when coupled with the risk of double recovery and the difficulty in ascertaining damages, are serious problems which weigh heavily against extending liability for loss of consortium into a new area. At this point, it is appropriate to note that a clear majority of states allow recovery for loss of marital consortium, yet only one jurisdiction permits a child to sue for loss of parental consortium when a nonfatal injury is involved. *See Borer v. American Airlines, Inc., supra*, 138 Cal.Rptr. 308, 563 P.2d at 864.

The plaintiffs also note that Nebraska allows recovery for loss of parental consortium in wrongful death cases. These cases, however, can be distinguished from the present case where the plaintiffs seek to recover for nonfatal injuries to their parents.

[T]he wrongful death action serves as the only means by which the family unit can recover compensation for the loss of parental care and services in the case of the wrongful death of the parent. While the parent lives, however, "the tangible aspects of the child's loss can be compensated in the parent's *own* cause of action. As put by Stainback, J., in *Halberg v. Young, supra*, 41 Hawaii 634, 640 . . ., 'where a parent has been injured by the negligent act of another the parent will recover from the other full damage which he has sustained, including such inability, if any, to properly care for his children, and thus the parent's ability to carry out his duty to support and maintain the child has not, in a legal sense, been destroyed or impaired by the injury to him.'" (*Suter v. Leonard, supra*, 45 Cal. App.3d 744, 748, 120 Cal.Rptr. 110, 112). *Borer v. American Airlines, Inc.*, 138 Cal. Rptr. at 310, 563 P.2d at 866.

It is, therefore, not unreasonable to allow recovery for loss of consortium when a parent dies, but not when the parent suffers a nonfatal injury.

It should also be noted that allowing recovery for nonfatal injuries would entail problems of multiplication of actions not present in the wrongful death context. If recovery were permitted for nonfatal injuries, a child would have a claim in every situation in which a parent is injured. The number of suits engendered by such a ruling would be far greater than the number of wrongful death actions involving loss of parental consortium. This multiplication of litigation counsels against expanding liability for loss of parental consortium, even though a child may presently recover for loss of consortium in a wrongful death action.

In conclusion, this Court is of the opinion that the Nebraska Supreme Court would follow the majority rule and deny a child a cause of action for loss of parental consortium. This holding is based on the strong policy considerations which weigh heavily against expanding liability for loss of parental consortium into a new and uncharted area.

An Order will be filed contemporaneously with this Memorandum Opinion.