Joseph AGUGLIARO, Plaintiff,

v.

BROOKS BROTHERS, INC., a/k/a Brooks Specialty, Inc.; Marks & Spencer Ltd., Marks & Spencer U.S. Inc.; Andrea Ross, Brian Curry, Erica Pasion and Jan Sixto Sarmiento, all individually and in their capacities as employees of the defendant, Brooks Brothers, Inc., Defendants.

No. 91 Civ. 4030 (KTD).

United States District Court, S.D. New York.

July 28, 1992.

Arthur G. Nevins, Jr., New York City, for plaintiff.

Rogers & Wells, New York City (Margaret Blair Soyster, Jane F. Golden, of counsel), for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff Joseph Agugliaro commenced this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–634 ("ADEA") against defendants Brooks Brothers, Inc., a.k.a. Brooks Specialty, Inc.; Marks & Spencer, U.S.A., Inc., and Andrea Ross, Brian Curry, Erica Pasion, and Jan Sixto Sarmiento, all individually and as employees of Brooks Brothers, Inc. Agugliaro also alleges various pendent state law claims against some or all of these defendants. Agugliaro amended his complaint on September 18, 1991 to delete Marks & Spencer, U.S.A., Inc., and to add Marks & Spencer, Ltd., and Marks & Spencer U.S. Inc. Defendants now move to dismiss the Amended Complaint under various sections of Fed.R.Civ.P. 12(b) and, pursuant to Fed.R.Civ.P. 37(a), for an order to compel discovery. Agugliaro cross-moves for leave to amend the complaint a third time to name Marks & Spencer p.l.c. as the proper defendant.

*Statement of Facts*

The allegations, which I must take to be true for the purposes of a motion to dismiss, are as follows: Agugliaro was employed by Brooks Brothers, Inc. continu-

ously from October 7, 1957 until June 18, 1990. Amended Complaint ¶ 14. On June 12, 1990, Agugliaro was suspended with pay by Andrea Ross, a personnel representative for Brooks Brothers, based upon an allegation that he had sexually harassed a subordinate female employee, Erica Pasion.[1] On June 18, 1990 Agugliaro attended a meeting with Ross and Brian Curry, the Store Operations Manager of the Brooks Brothers store. At that meeting Agugliaro was fired from his position as Manager of Receiving and Stock by both Ross and Curry. *Id.* at ¶¶ 6, 17, 26. At the time of his discharge, Plaintiff was 51 years old.

Agugliaro alleges that his termination was based, not upon allegations of sexual harassment, but rather upon his age and gender. *Id.* at ¶ 31. He asserts that the allegations of sexual harassment were merely a pretext for his firing so that Brooks Brothers and/or Marks & Spencer could be relieved of any obligation to pay his salary and future retirement benefits.[2]

In July, 1990 Agugliaro filed a complaint with the City of New York, Commission on Human Rights alleging age and sex discrimination. *Id.* at ¶ 5. In September, 1990 his complaint was dually filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 20. At Agugliaro's request, a Notice of Right to Sue was issued by the EEOC in March, 1991. *Id.* at ¶ 21. Agugliaro received this Notice of Right to Sue on March 23, 1991 and filed this suit within ninety days thereafter. *Id.* at ¶ 22–23.

*Discussion*

■ Pursuant to Fed.R.Civ.P. 12(b)(2) and (4), Defendants move to dismiss the Amended Complaint as against Marks & Spencer, Ltd. and Brian Curry. Specifically, Marks & Spencer, Ltd. and Curry each maintain that, because Agugliaro has failed to make effective service of process on them, this court does not have personal jurisdiction over them. Defendants also maintain that the Amended Complaint should be dismissed as against Marks & Spencer U.S., Inc. because it fails to state a claim against that entity.

Defendants contend that: (1) there is no entity named "Marks & Spencer, Ltd." within the Marks & Spencer corporate structure and (2) Marks & Spencer U.S., Inc., a wholly owned subsidiary of Marks & Spencer p.l.c., is a dormant corporation existing only to reserve the Marks & Spencer name for potential future use. As such, Defendants argue that Marks & Spencer U.S., Inc. has no connection with Agugliaro or his termination.

Agugliaro admits that he did not name the proper Marks & Spencer entity in his Amended Complaint and cross-moves to amend the complaint once again to name Marks & Spencer p.l.c. which appears to be the proper name of this corporate defendant.

There is nothing to suggest either that Agugliaro's cross-motion is motivated by bad faith or that allowing him to amend the complaint will result in undue delay or prejudice to the defendants. *See Schonberger v. Serchuk*, 742 F.Supp. 108, 117 (S.D.N.Y. 1990). Nor would it be futile to allow Agugliaro to amend his complaint. *See id.* Contrary to the Defendants' belief that Marks & Spencer p.l.c. is not subject to personal jurisdiction in New York simply because it is not a New York corporation and, allegedly, does not do business in New York, N.Y.Civ.Prac.L. & R. ("CPLR") 302(a)(3) may provide this court with personal jurisdiction over this non-domiciliary.

Agugliaro alleges that Marks & Spencer p.l.c. is liable as Brooks Brothers' parent because it "owned, controlled, managed, and operated and directed" Brooks Brothers during the period of time when Agugliaro and numerous other senior manage-

---

1. June 12, 1990 was the first time Plaintiff had been notified of these allegations. Amended Complaint ¶ 25.

2. Plaintiff maintains that he was replaced by a younger person of reduced seniority who was earning a much reduced salary. Amended Complaint ¶ 33. Plaintiff also contends that at least three long time employees/managers/buyers have lost their employment, two of them not replaced at all. (Affidavit of Joseph Agugliaro pp. 1–2).

ment employees were terminated. He also states his beliefs regarding Marks & Spencer p.l.c.'s domination over Brooks Brothers' personnel management decisions. While the Southern District of New York has stringent pleading requirements for holding a parent corporation liable for the acts of its subsidiary, *see, e.g., American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988) (holding that a parent did not exercise complete domination "in respect to the transaction attacked" such that the subsidiary had "at the time" no separate will of its own), defendants have not sought relief on this ground.

Therefore, because Agugliaro does not demonstrate any reason why Marks & Spencer, Ltd. and Marks & Spencer U.S., Inc. are proper parties to this suit, I will dismiss the Amended Complaint as against them. However, Agugliaro's cross-motion to amend his complaint to include Marks & Spencer, p.l.c. is granted.

Agugliaro also cross-moves this court to fashion an expeditious form of service upon Marks & Spencer p.l.c. by directing that the summons and complaint be delivered to its local attorney and mailed to Marks & Spencer p.l.c. headquarters in England.

It does not appear as though Agugliaro has sustained the burden of showing that he has exhausted all of the possible methods for service on Marks & Spencer p.l.c. *See Sangdahl v. Litton,* 69 F.R.D. 641, 644–645 (S.D.N.Y. 1976) (citations omitted). Therefore, I will not order substituted service but will allow Agugliaro sixty days to perfect service on Marks & Spencer p.l.c.

Agugliaro also admits that proper service has yet to be effected upon Brian Curry. I will not consider any motion to dismiss as against a defendant who is not a party to this action. It may well be that a motion pursuant to Rule 4(j) may be in order.

*Failure to Name*

██ Defendants Marks & Spencer U.S., Inc. and Marks & Spencer, Ltd. next argue that because they were not named in Agugliaro's EEOC charge, the first and second causes of action should be dismissed as against them. Agugliaro's

EEOC charge named only Brooks Brothers and Andrea Ross. As I have already granted the plaintiff's motion to amend his complaint to replace the named Marks & Spencer defendants with Marks & Spencer p.l.c., Defendants' motion to dismiss these causes of action against the named Marks & Spencer defendants is now moot. Nevertheless, the Plaintiff's naming of Marks & Spencer p.l.c. *in his second amended complaint* will present the same question.

Generally, a party who has not first been named as a respondent in an EEOC charge may not subsequently be made a defendant in an action either under Title VII or the ADEA. *See e.g., Toliver v. Sullivan Diagnostic Treatment Center,* 748 F.Supp. 223, 225 (S.D.N.Y.1990). The purpose of this notice requirement is to notify the charged party of the alleged violation and to give him an opportunity to resolve the dispute through conciliation. *Travers v. Corning Glass Works,* 76 F.R.D. 431, 433 (S.D.N.Y. 1977). However, when failure to comply with this requirement does not undermine the purpose of the requirement, courts have allowed plaintiffs to sue defendants who were not named in the EEOC complaint. *See Koster v. Chase Manhattan Bank,* 554 F.Supp. 285, 289 (S.D.N.Y.1983) (allowed respondent to be named in complaint even though he was not named in EEOC charge because no conciliation had been attempted and the court was convinced that respondent was sufficiently aware of the plaintiff's administrative charge).

According to the complaint, there appears to have been substantial identity of interest between Marks & Spencer p.l.c. and Brooks Brothers. Marks & Spencer is alleged to have operated and directed Brooks Brothers at all times relevant to the instant lawsuit. The crucial question, however, is whether Marks & Spencer p.l.c. had actual notice that a charge had been filed by Agugliaro with the EEOC. *See Toliver,* 748 F.Supp. at 225. While the Defendants argue that Agugliaro does not allege that Marks & Spencer p.l.c. had actual notice of the EEOC charge, they never once state that Marks & Spencer p.l.c. was unaware

of the charge. It seems likely that, as the parent of Brooks Brothers, Marks & Spencer p.l.c. would have been informed of the EEOC charge and would have been made aware of any resulting investigation. In any event, an inference to that effect is entirely reasonable. *See e.g.,* *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494, 500 (S.D.N.Y.1989) (holding that it would be inappropriate to dismiss a claim against a defendant as it was unclear whether defendant had actual notice of the administrative charge). Thus, drawing all reasonable inferences in favor of the plaintiff, it would be premature to dismiss these claims against Marks & Spencer p.l.c. at this point in the proceedings.

*Improper citing of ERISA section*

■ Defendants maintain that Agugliaro's third cause of action should be dismissed for failure to state a claim upon which relief can be granted. Defendants contend that Agugliaro improperly alleged a violation of his rights under § 514 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1144. Because § 514 is nothing but the "preemption provision" of ERISA, Defendants argue that it provides no independent right of action. Agugliaro concedes that his third cause of action inaccurately cites the proper provision of ERISA and cross-moves for leave to amend his complaint to cite the correct provisions. Fed.R.Civ.P. 15(a) states that "leave shall be freely given when justice so requires." Defendants have suggested none of the accepted reasons why the amendment ought not be allowed. *See Schonberger v. Serchuk,* 742 F.Supp. at 117, and will suffer no prejudice by allowing Agugliaro to amend his complaint. Consequently, Agugliaro is permitted to amend his complaint to allege the proper section of ERISA.

*Failure to State a Claim under 42 U.S.C. § 1985(3)*

■ Defendants also move to dismiss Agugliaro's fourth cause of action for failure to state a claim upon which relief can be granted. Defendants first maintain that Agugliaro has failed to satisfy the stringent pleading requirements for alleging a § 1985(3) violation. Defendants next argue that a § 1985(3) violation cannot be used to redress an alleged violation of the ADEA or Title VII. Finally, Defendants argue that Agugliaro has failed to allege a conspiracy charge.

A complaint alleging a conspiracy charge under § 1985 must "set forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff." *Richards v. New York State Department of Correctional Services,* 572 F.Supp. 1168, 1174 (S.D.N.Y. 1983). The Amended Complaint is pleaded with sufficient particularity to show what the defendants did to carry the alleged conspiracy into effect. Agugliaro alleges that Pasion and Sarmiento falsely reported incidents of sexual harassment and that Curry and Ross, acting at the behest of the corporate defendants, terminated the plaintiff without giving him the opportunity to defend himself by means of a hearing. These alleged facts clearly fit into the framework of the conspiracy alleged and, if true, were likely meant to result in Agugliaro's injury.

■ This court recognizes that a violation of Title VII cannot be asserted through 42 U.S.C. § 1985(3) as a complainant could then avoid most of the detailed administrative and judicial processes designed to provide an opportunity for nonjudicial and non-adversary resolution of claims. *See Great American Federal Savings and Loan Association v. Novotny,* 442 U.S. 366, 372–373, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Complainant would also be able to seek compensatory and possibly punitive damages. *Id.* at 376, 99 S.Ct. at 2351. However, since Agugliaro has already gone through the administrative processes required in order to bring a Title VII claim into court, it does not appear that he is trying to do an end run around any of the burdensome administrative processes.

■ The statutory requirement that two or more persons be involved in order to establish a conspiracy cannot be satisfied if the two "persons" are a corporation and its agent. *E.g., Girard v. 94th Street & Fifth Avenue Corporation,* 530 F.2d 66, 70 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d. 798 (1976). Defendants claim that because Ross, Curry, Pasion and Sarmiento were, at the time of the alleged violation, all employees of the corporate defendants, the conspiracy claim must fail. However, Agugliaro has alleged that Ross, Curry, Pasion and Sarmiento were acting both within and outside the scope of their authority as employees or agents of the two corporate defendants when these individual defendants conspired to terminate Agugliaro. If this be the case, the individual defendants would not have been carrying out the corporation's managerial policy but would have been acting upon their own motives. As such, these allegations could indeed support Agugliaro's conspiracy allegations. Therefore, Defendants' motion to dismiss Agugliaro's fourth cause of action is denied.

*Failure to State a Claim Under NY Human Rights Law*

■ The defendants also move to dismiss Agugliaro's fifth cause of action, under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants maintain that Agugliaro's initial decision to pursue his discrimination claims through the New York City Commission on Human Rights was a binding election of remedies, and that consequently he is precluded from stating a cause of action under the NY Human Rights Law in this court. Because Defendants' motion seems more appropriately one under Fed.R.Civ.P. 12(b)(1), I will treat it as a motion to dismiss for lack of subject matter jurisdiction.

Agugliaro argues that while a plaintiff cannot bring a court action while an administrative proceeding is on-going, such an action may be brought if the administrative proceeding has been terminated. Agugliaro alleges that the New York City Commission on Human Rights "terminated its investigation for administrative convenience" when it turned his claim over to an EEOC investigator for investigation of ADEA violations. In light of his belief, Agugliaro maintains that his Human Rights Law claim should not be dismissed.

■ The law in the Second Circuit regarding the election of remedies for a discrimination claim is clear: the plaintiff can bring either a state administrative action or a court proceeding, but not both. A federal court can not exercise pendent jurisdiction over a state claim for discrimination while the plaintiff's state administrative proceeding is pending. *Promisel v. First American Artificial Flowers,* 943 F.2d 251, 254–258 (2d Cir.1991).

Agugliaro's allegation that the state investigation automatically terminated when the EEOC issued its Notice of Right to Sue is incorrect. New York law clearly states that the state administrative agency must issue a very specific order before the proceeding is considered terminated for administrative convenience.[3] The record does not suggest that such an order has yet been issued by the commission. Agugliaro is directed to replead his fifth cause of action within 10 days to show that he is entitled to bring such claim in this court. Failure to do so will result in automatic dismissal.

*Failure to State a Claim for Tortious Interference with Contract or Interference with Prospective Business Relationship*

Defendants move to dismiss Agugliaro's sixth cause of action for failure to state a claim upon which relief can be granted as to either tortious interference with contract

---

**3.** *See* N.Y.Comp.Codes R. & Regs. tit. 9, § 465.5 (complaint may be dismissed on the ground of administrative convenience when "the complainant has initiated or wants to initiate ... a court action based on the 'same grievance"); (the commissioner or director of regional af-

fairs of the appropriate division of the Human Rights Commission shall then "issue and serve upon all parties an order dismissing said complaint, which shall state the grounds for such dismissal and shall contain notice to the complainant of a right to appeal[.]")

or tortious interference with a prospective business relationship.

*Tortious Interference with Contract*

■ Defendants argue that because Agugliaro had no employment contract he was an employee at-will throughout his employment with Brooks Brothers. Consequently, Defendants argue that there can be no claim for tortious interference with contract, and that any claim for interference under these circumstances must be brought as a claim for interference with a prospective business relationship.

Agugliaro contends that employment is always a contractual relationship and even though an employer may not be required to show employee misconduct or failure of performance prior to terminating an employee at-will, an employer may not fire an employee if his motives for doing so violate applicable law.

■ In an at-will relationship the law accords the employer an unfettered right, absent a constitutionally impermissible purpose, *a statutory proscription,* or an express limitation in the individual contract of employment, to terminate the contract at any time. *See Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 304–305, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (emphasis added). Therefore, if Brooks Brothers terminated Agugliaro for a reason which is not allowed by law, the fact that Agugliaro was an at-will employee would be irrelevant; the termination would be unjust and improper.[4]

■ According to the Complaint, it appears that Agugliaro has sufficiently alleged facts which, through discovery, could demonstrate that Marks & Spencer p.l.c. and the individual defendants, acting on personal motives, intentionally and "im-

properly" interfered with Agugliaro's employment contract with Brooks Brothers.[5]

As such, Defendants' motion to dismiss Plaintiff's sixth cause of action for tortious interference with contract is denied.

*Tortious Interference With Prospective Business Relationship*

■ Agugliaro's sixth cause of action also alleges tortious interference with prospective business relationship. Defendants maintain that because Marks & Spencer p.l.c. functions as Brooks Brothers' alter ego, there is no basis for a claim against any Marks & Spencer entity for interference with the employment relationship between Agugliaro and Brooks Brothers. Defendants also contend that since a corporation can only act through its employees and agents, Agugliaro cannot state this claim against his former co-workers.

In response, Agugliaro merely alleges that the acts of the defendants, excluding Brooks Brothers, were committed with reckless disregard of his rights and were an intentional interference with his prospective economic advantage in his continued employment.

The tort of interference with a prospective business relationship is committed when a contract would have been entered into had it not been for the malicious conduct of a third person. *A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 376, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957). There is nothing in the complaint to suggest that Agugliaro and Brooks Brothers were about to enter into a contract and failed to because of Defendants' actions.

As such, the Defendants' motion to dismiss Agugliaro's sixth cause of action for

---

4. According to the Restatement (Second) of Torts § 766(g), until the employer of an at will employee has terminated the agreement, "the contract is valid and subsisting" and other parties "may not improperly interfere with it." The Defendants, however, rely upon Restatement (Second) of Torts § 768 which expressly classifies a contract terminable at-will in the as a prospective contractual relationship and not an existing contractual relationship. However, § 768 discusses the propriety or impropriety of

interference by *competitors* and as such is not applicable here.

5. Among the elements of the tort of intentional interference with a contract are: the existence of a valid contract, the defendants' knowledge of that contract, the defendants' intentional procuring of a breach of that contract, actual breach of the contract, and damages. *Israel v. Wood Dolson Company, Inc.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956).

tortious interference with prospective business relationship is granted.

*Failure to State a Claim for Intentional Infliction of Emotional Distress*

■ Defendants also maintain that Agugliaro's seventh cause of action should dismissed as it fails to state a claim for intentional infliction of emotional distress. Defendants suggest that Agugliaro's allegations with respect to his discharge from Brooks Brothers and the circumstances leading up thereto fall far short of the level of outrageousness required to withstand a motion to dismiss.

Agugliaro maintains, however, that if he is able through discovery to substantiate his allegations that his termination and the accusations made against him by the defendants were false and in bad faith, a jury would be able to find that the defendants acted outrageously and intolerably and, as such, are liable to him for intentional infliction of emotional distress.

■ To survive a motion to dismiss, Agugliaro must allege that a person, by extreme and outrageous conduct, intentionally or recklessly caused him severe emotional distress. *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978). *See* Restatement (Second) of Torts § 46 (Subd [1]). Comment (d) to Section 46 of the Restatement (Second) Torts notes that "liability has been found only where the conduct has been so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." The facts as alleged by Agugliaro fall far short of this strict standard. Further, as there is no cause of action in New York for abusive or wrongful discharge of an at-will employee, Agugliaro should not be allowed to evade this rule by casting his cause of action in terms of intentional infliction of emotional distress.

Accordingly, Plaintiff's seventh cause of action is dismissed.

*Request for Compensatory and Punitive Damages*

Defendants argue that Agugliaro's request for compensatory and punitive damages in his first, second and third causes of action, and his request for punitive damages in his fifth cause of action should be stricken.

*Under ADEA and Title VII*

■ Defendants contend that Agugliaro's request for compensatory and punitive damages in his first and second causes of action should be denied as both are unavailable under the ADEA and Title VII.

Agugliaro suggests that since the law on damages for each of the causes of action is constantly evolving the court should consider his requests for compensatory and punitive damages. Too, Agugliaro maintains that, through discovery, further facts may be uncovered which may impact the type of damages to which he may be entitled.

Compensatory and punitive damages are unavailable under both the ADEA and Title VII. *See Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) ("[t]he majority of the federal courts have held that the Act [Title VII] does not allow a court to award general or punitive damages" (citations omitted)); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147–148 (2d Cir.1984) (compensatory and punitive damages are not available under the ADEA).

*Under N.Y. Human Rights Law*

■ Similarly, punitive damages are not available in employment discrimination actions brought under the New York Human Rights Law. *Conan v. Equitable Capital Management Corp.*, 774 F.Supp. 209, 210 (S.D.N.Y.1991) (relying on legislative history, statutory construction, and fact that punitive damages are not available under equivalent federal statutes, namely, Title VII and the ADEA).

*Under ERISA*

■ Defendants also maintain that even if this court grants Agugliaro's cross-motion to amend his third cause of action to allege a violation of the proper ERISA section Agugliaro's request for compensa-

 

tory and punitive damages should be stricken based upon relevant case law.

Agugliaro cites no case law to contradict the Defendants' contentions. In fact, this District has made it clear that "punitive and other extra-contractual damages are unavailable under ERISA claims." *Lawford v. N.Y. Life Insurance Co.*, 739 F.Supp. 906, 914 (S.D.N.Y.1990).

Therefore, I will grant the Defendants' motion to strike the compensatory and punitive damages claims from the first and second causes of action and the punitive damages claim from the fifth cause of action. While I will allow Agugliaro to amend his complaint to allege the proper ERISA section, the extra-contractual and punitive damages must be stricken.

*Conclusion*

For all of the above stated reasons, I am: (1) dismissing the Amended Complaint as against Marks & Spencer, Ltd. and Marks & Spencer U.S., Inc.; (2) granting Agugliaro's cross-motion to include Marks & Spencer p.l.c. in his second Amended Complaint; (3) providing Agugliaro with 60 days to effect proper service on Marks & Spencer p.l.c. but denying Agugliaro's request for expedited service; (4) granting Defendants' motion to dismiss the first and second causes of action as against Marks & Spencer U.S., Inc. and Marks & Spencer Ltd., but not as against Marks & Spencer p.l.c.; (5) granting Agugliaro's cross-motion to amend his Amended Complaint to allege the proper section of ERISA; (6) denying Defendants' motion to dismiss Agugliaro's fourth cause of action; (7) directing Agugliaro to replead his fifth cause of action within ten days to show that he is entitled to bring such claim in this court; (8) denying Defendants' motion to dismiss Agugliaro's claim for tortious interference with contract but granting Defendants' motion to dismiss Agugliaro's claim for tortious interference with prospective business relationship; (9) granting Defendants' motion to dismiss Agugliaro's claim for intentional infliction of emotional distress;

and (10) striking Agugliaro's request for compensatory and punitive damages in his first, second and third causes of action and for punitive damages in his fifth cause of action. In addition, Defendants' motion for sanctions and its motion for attorney's fees incurred as a result of their motion to compel discovery are denied.[6]

SO ORDERED.

---

**6.** Apparently Agugliaro produced the requested documents in his response to Defendants' motion to compel discovery. Defendants have submitted no reply to Agugliaro's response. Thus, I will assume that the motion is now moot.